IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL J. V., ) | |
| ) | |
| Plaintiff, ) | Case No. 1:23-cv-2275 |
| v. ) | |
| ) | Magistrate Judge Jeannice W. Appenteng |
| FRANK BISIGNANO, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael J. V. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. After review of the record and the parties' respective arguments, the Court grants the Commissioner's motion.

## BACKGROUND

Plaintiff protectively applied for DIB benefits on July 7, 2020 alleging disability since November 16, 2018 due to a fractured femur, reconstructed knee, constant migraines, post-traumatic stress disorder ("PTSD"), depression, high anxiety, and attention deficit disorder. Administrative Record ("R.") 238-39, 270. Plaintiff subsequently amended the alleged onset date to March 18, 2019. R. 13, 40-41. Born in October 1980, plaintiff was 38 years old as of the amended onset date,

making him a younger person (under age 50). 20 C.F.R. § 404.1563(c); R. 238. He graduated from high school and worked as a carpenter and an aviation police officer. R. 42-44, 271-72. In March 2019, plaintiff suffered an accidental gunshot wound to the left thigh requiring surgery. R. 20, 41-42, 359. He stopped working due to his conditions and has not engaged in substantial gainful activity since the alleged onset date. R. 44, 270.

The Social Security Administration denied plaintiff's application initially on August 9, 2021, and upon reconsideration on January 27, 2022. R. 72-98. Plaintiff filed a timely request for a hearing and on July 18, 2022, he appeared before an administrative law judge ("ALJ"). R. 34. The ALJ heard testimony from plaintiff, who was represented by counsel, from medical expert Michael Hartsfield, M.D. (the "ME") and from vocational expert Leida Woodham (the "VE").[1] R. 35-71. On September 29, 2022, the ALJ found that plaintiff's status post gunshot wound to the left thigh, open reduction internal fixation (ORIF) left femur fracture with post-traumatic ankylosis of the left knee, depressive disorder, panic disorder, attention deficit hyperactivity disorder ("ADHD") and PTSD are severe impairments, but that they do not alone or in combination with plaintiff's non-severe impairments meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16-18.

After reviewing the evidence, the ALJ concluded that plaintiff has the RFC to perform a reduced range of light work. R. 18-26. The ALJ accepted the VE's

---

[1] The hearing was held telephonically due to the COVID-19 pandemic.

2

testimony that a person with plaintiff's background and this RFC could not perform plaintiff's past relevant work, but could perform a significant number of other jobs available in the national economy. R. 26-27. As a result, the ALJ concluded that plaintiff was not disabled at any time from the alleged disability onset date through the date of the decision. R. 28. The Appeals Council denied plaintiff's request for review on February 10, 2023. R. 1-5. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, plaintiff argues that the ALJ: (1) made a flawed mental RFC determination that failed to properly account for all of his limitations; and (2) erred by omitting a requirement that he elevate his leg to waist height.[2] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

### A.   Standard of Review

A claimant is disabled within the meaning of the Social Security Act if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[2] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

3

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54

4

(internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion"); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

**B.     Analysis**

    **1.     Mental RFC**

Plaintiff argues that the case must be reversed or remanded because the mental RFC is flawed. Dkt. 12 at 8-11; Dkt. 20 at 3. A claimant's RFC is the maximum work that he can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Bronwen M. v. Kijakazi*, No. 22 C 50153, 2023 WL 6388207, at *2 (N.D. Ill. Sept. 29, 2023) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

The ALJ found that despite plaintiff's moderate limitations in concentration, persistence, or pace ("CPP"), he is capable of understanding, remembering, and carrying out simple instructions for simple, routine tasks. R. 18. In support of this decision, the ALJ provided a thorough review of the medical, opinion, and testimonial evidence. It appears that plaintiff started receiving psychiatric care from Dickie Kay, M.D. in May 2016, R. 851, but the first available treatment record is from February 10, 2020. R. 809. At that appointment, plaintiff was stable with no complaints and reported taking his girlfriend to work, going out, and shopping. R.

5

23, 809. A mental status exam was largely unremarkable with no depressive symptoms observed, normal attention span, intact insight and judgment, logical thinking, normal speech, and appropriate thought content. R. 23, 810. Dr. Kay instructed plaintiff to continue taking Adderall and alprazolam. *Id*.

The following month, on March 6, 2020, plaintiff was admitted to the hospital for depression with suicidal ideation. R. 22, 484. He tested positive for cocaine, amphetamines, and cannabinoids and was assessed with benzodiazepine and alcohol abuse. R. 22, 479, 484. Plaintiff did not agree with the recommended treatment plan and on March 9, 2020, he left the hospital against medical advice. R. 22, 457. Two days later on March 11, 2020, plaintiff saw Dr. Kay and reported that he was not doing well due to daily PTSD and depressive symptoms. R. 811. On exam, however, plaintiff exhibited no signs of depression, anxiety, or difficulties with attention. R. 22, 812. His speech was normal and he demonstrated logical thinking, appropriate thought content, and normal insight and judgment. *Id*. Dr. Kay added Zoloft to plaintiff's medication regimen. R. 812.

Plaintiff saw Dr. Kay nine more times between April 20, 2020 and April 6, 2022. At each appointment, plaintiff was stable on his medication with no signs of depression, anxiety or problems with attention. R. 22, 23, 814-16, 819, 821, 823-26, 828-31, 833-34. Plaintiff largely ignores the normal findings and fails to explain how his single hospital admission in March 2020 and general complaints about anxiety demonstrate greater functional limitations than the ALJ found. Dkt. 12 at 9-10. *Compare Gerstner v. Berryhill*, 879 F.3d 257, 261-62 (7th Cir. 2018) (ALJ erred

6

by fixating on "select portions" of treatment notes and ignoring entire diagnoses, including depression and anxiety disorder); *Mandrell v. Kijakazi*, 25 F.4th 514, 518 (7th Cir. 2022) (reversing where ALJ "disregarded substantial portions of the medical testimony in the record.").

Plaintiff argues that the ALJ still erred by failing to adopt a June 23, 2022 opinion from Dr. Kay that he is incapable of working. Dkt. 12 at 13-14. Since plaintiff filed his claim in July 2020, the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion. 20 C.F.R. § 404.1520c(a). *See also Robert J. L. v. O'Malley*, No. 20 C 50444, 2024 WL 809091, at *2 (N.D. Ill. Feb. 27, 2024). Instead, the ALJ was required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). An ALJ must explain how he considered the first two factors (supportability and consistency) and may but is not required to explain his consideration of the other factors. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D.*, 2022 WL 972280, at *4 (citing 20 C.F.R. § 404.1520c(c)(1)).

7

"Consistency assesses how a medical opinion squares with other evidence in the record." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)).

Dr. Kay completed a mental RFC statement opining that plaintiff is precluded from understanding, remembering, sustaining concentration, socializing, and adapting for 15% or more of an eight-hour workday. R. 851-53. According to Dr. Kay, plaintiff will be off-task more than 30% of the workday, would miss more than six days of work per month, and can work less than 20% of a workday without continuous supervision or undue interruptions or distractions. R. 853. Dr. Kay further stated that plaintiff suffers from memory lapses and is "unable to obtain and retain work in a competitive work environment." R. 853-54.

The ALJ found Dr. Kay's opinion "not persuasive" because his dire assessment was inconsistent with his own treatment notes which, as discussed, showed that plaintiff routinely presented with no symptoms of depression or anxiety and had normal attention, thought process, insight and judgment. R. 24. *See Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (an ALJ may decline to credit a treating physician's opinion when it "is inconsistent with the physician's treatment notes."). The ALJ also reasonably explained that Dr. Kay's opinion was inconsistent with other medical records showing plaintiff to be cooperative and appropriate with a normal mood and affect. R. 22-23, 517 (April 2019), 527-28, 531 (March 2019), 548 (January 2019), 848 (April 2022). *See Alejandrina A. v. Kijakazi*, No. 20 C 4089, 2023 WL 2539239, at *12 (N.D. Ill. Mar. 16, 2023) (citing *Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021)) (ALJ properly discounted treating

8

physician's statement that was "inconsistent with other objective evidence in the record.").

Plaintiff objects that the ALJ did not properly account for how ongoing pain impacts his ability to remain on task, noting Dr. Kay's observation that he is "less able to cope with pain" due to confusion and frustration. Dkt. 12 at 11-12 (citing R. 853). This argument is unpersuasive because the ALJ expressly discussed plaintiff's complaints of pain, R. 19, but also observed that notwithstanding such pain, mental exams remained essentially unremarkable. Indeed, Dr. Kay repeatedly described plaintiff as having a normal attention span. R. 22-23, 810, 812, 814, 816, 819, 822, 824, 826, 829. The ALJ did not err in considering this evidence. *Christopher R. v. Kijakazi*, No. 21 CV 500, 2023 WL 5017942, at *4 (N.D. Ill. Aug. 7, 2023) ("ALJs may consider consistently normal mental status examination findings in assessing a claimant's symptoms as one piece of evidence to weigh against the rest."); *Elizabeth A. D. v. Saul*, No. 19 C 6024, 2021 WL 148831, at *13 (N.D. Ill. Jan. 15, 2021) (finding that "the ALJ appropriately focused on the inconsistencies between [the plaintiff's] allegedly disabling mental symptoms and evidence.").

Similarly unavailing is plaintiff's assertion that the ALJ improperly discounted his subjective complaints based on his ability to engage in various activities of daily living. Dkt. 12 at 10-11. To begin, "it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016). Moreover, the

ALJ in no way equated plaintiff's ability to do laundry, dishes, and grocery shopping, take his girlfriend to work, and work out at a health club with an ability to perform full-time work. R. 23, 809, 978. The ALJ simply concluded that plaintiff's ability to engage in these activities undermined his claim of disabling mental impairment. R. 23. This was entirely proper. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("ALJ did not equate Burmester's ability to perform certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms consistent with the applicable rules").

There is finally no merit to plaintiff's argument that the ALJ only considered his ADHD in assessing the RFC while ignoring his depression, PTSD, and anxiety disorder. Dkt. 12 at 8. The ALJ found all four impairments to be severe and repeatedly addressed them throughout the decision. R. 16, 17, 19, 22, 26.

Viewing the record as a whole, the ALJ's conclusion that plaintiff is capable of work involving simple instructions and simple, routine tasks is supported by substantial evidence. *See Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (courts "apply a very deferential standard of review to the ALJ's decision"). "Although plaintiff may disagree with how the ALJ weighed the evidence and the conclusions the ALJ drew from that evidence, this Court does 'not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's.'" *Bridget T. M. v. O'Malley*, No. 21 C 50290, 2024 WL

10

4347193, at *2 (N.D. Ill. Sept. 30, 2024) (quoting *Gedatus*, 994 F.3d at 900). Plaintiff's request to remand the case for further consideration of his mental RFC is denied.

### 2. Leg Elevation

Plaintiff does not challenge most aspects of the physical RFC determination and has waived those arguments. *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020) (arguments not raised before the district court are waived). The one exception concerns whether plaintiff needs to elevate his leg to waist level. The ALJ acknowledged plaintiff's testimony that he elevates his leg 80% of the day. R. 19, 46. And ME Hartsfield did opine that plaintiff would need to elevate his leg for a short period. But that was because at the time of the July 18, 2022 hearing, plaintiff was less than one month status-post a June 27, 2022 surgical procedure to remove hardware from his distal femur with knee manipulation and lysis of adhesions. R. 49, 880, 1119. Dr. Hartsfield made clear that such a restriction was not permanent. R. 49-50.[3]

Plaintiff disputes Dr. Hartsfield's assessment, and the ALJ's reliance on it, but does not point to any physician of record who found him more physically limited than the ALJ. Dkt. 12 at 14-15. In fact, the ALJ accepted the uncontroverted June 14, 2022 opinion from plaintiff's own treating orthopedic surgeon Bradley Merk, M.D. that despite persistent pain, plaintiff can sit for more than two hours at a time

---

[3] Plaintiff cites to R. 899 as evidence that he needs to elevate his leg but that October 3, 2019 note merely states that plaintiff needed to work on weightbearing and range of motion.

11

and sit for at least six hours total in an eight-hour workday with no mention of leg elevation. R. 838. "The lack of an opposing medical opinion [imposing greater restrictions than those the ALJ found in his decision] makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal." *Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023).

Viewing the record as a whole, the ALJ did not err in accepting the ME's uncontroverted testimony that plaintiff does not need to elevate his leg to waist height. Plaintiff's motion to remand the case for further consideration of this issue is denied.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment [12] is denied, and the Commissioner's motion for summary judgment [18] is granted. Plaintiff's reply brief [20] was improperly docketed as a motion and so is denied as moot. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED.**

_____
**Jeannice W. Appenteng**
**United States Magistrate Judge**

Date: 7/28/2025